UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES GOODELL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SOLEDAD UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 19-cv-06196-VKD<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 104-111 |

The Court held a pretrial conference in this matter on June 23, 2021. Dkt. No. 130. This order resolves the parties' motions in limine. Dkt. Nos. 104, 105, 106, 107, 108, 109, 110, 111. The Court will issue separate orders regarding the parties' proposed jury instructions (Dkt. No. 117, Exs. 6(a), 6(b)) and other matters discussed during the pretrial conference.[1]

## I.  PLAINTIFFS' MOTION IN LIMINE NO. 1

### A.  Heather Goodell's Employment with the District

Plaintiffs move for an order excluding any evidence regarding Heather Goodell's employment as a substitute teacher with the District. Dkt. No. 105. They argue that evidence of her conduct, personality traits, and performance as a substitute teacher, and specifically any evidence that she treated students poorly, is inadmissible character evidence that is not relevant to any issue in dispute. Fed. R. Evid. 401, 402, 403, 404(a). The District argues that such evidence is relevant to show that it does respond to complaints that students are being abused. Additionally,

---

[1] After motions in limine were filed, and following the pretrial conference, the parties confirmed that they stipulate to the dismissal of defendants Jaime Notheis and Jaime Calderon. Dkt. No. 136. Accordingly, the District is the sole remaining defendant.

1  inasmuch as the District says it did not invite Heather Goodell to return as a substitute teacher
2  after receiving complaints about her conduct, the District contends that evidence of her
3  employment as a substitute teacher is also relevant to show a possible motive for plaintiffs'
4  decision to pursue the present lawsuit.

The motion is granted.

The District does not dispute that it has no information that Heather Goodell harmed C.G. or that C.G.'s injuries were caused by her conduct.[2] In the absence of such evidence, the District appears to argue that evidence of Ms. Goodell's conduct at school is admissible because it would allow the jurors to infer that if she treated students poorly when she served as a substitute teacher, she also treated C.G. poorly and is at least partially responsible for his injuries. *See* Dkt. No. 116 at 3. Such evidence is inadmissible character and propensity evidence. Fed. R. Evid. 404(a).

At the hearing on this motion, the District argued that it should be permitted to demonstrate that Ms. Goodell herself engaged in the same type of abusive behavior that plaintiffs say Mr. Notheis engaged in with respect to C.G. It is not clear to the Court how evidence of Ms. Goodell's alleged hypocrisy is relevant to any matter at issue in the case, and the District was unable to identify any such matter. The Court excludes this evidence on the additional ground that it is not relevant and would be unfairly prejudicial to plaintiffs. Fed. R. Evid. 401, 402, 403.

Similarly, the District argues that evidence of Ms. Goodell's conduct and employment as a substitute teacher is relevant to show that she initiated this action on behalf of C.G. and against defendants because of her presumed displeasure at not being asked to substitute teach. *See* Dkt. No. 116 at 5. Ms. Goodell's motives for filing this action on behalf of C.G. are not relevant to any matter at issue in the case. The Court also excludes this evidence on the additional ground that it is not relevant and would be unfairly prejudicial to plaintiffs. Fed. R. Evid. 401, 402, 403.

**B.     Evidence re Monterey County Department of Social Services ("MCDSS")**

Discovery yielded evidence that both Mr. Notheis and Mr. Calderon contacted MCDSS concerning their suspicions that James and Heather Goodell were abusing C.G. Plaintiffs argue

---

[2] Defendants stated during the hearing that they have evidence that C.G. arrived at school on one occasion with soiled pants.

2

1  that any evidence concerning the MCDSS is irrelevant and constitutes improper character
2  evidence. Fed. R. Evid. 401, 402, 403, 404. Additionally, there being little evidence relating to
3  MCDSS, plaintiffs argue that the nature and extent of the MCDSS's involvement in matters
4  concerning C.G. is unknown and highly speculative.

The District argues that any evidence showing that Mr. Calderon and Mr. Notheis *reported* their suspicions of abuse, as opposed to any subsequent *findings* by MCDSS, is relevant to show how they responded to concerns about student safety, and is admissible under Federal Rule of Evidence 406 to demonstrate a routine practice of mandatory reporting compliance upon development of a reasonable suspicion of abuse. The District also contends that such evidence is relevant to show James and Heather Goodell's possible motive for filing the present lawsuit. The District further contends that the risk of any prejudicial effect of allowing such evidence can be mitigated through an appropriate limiting instruction to the jury.

The motion is granted.

The Court is not persuaded that evidence that Mr. Calderon and Mr. Notheis contacted MCDSS on one occasion concerning their suspicions that the Goodells were abusing C.G. is evidence of their or the District's practice of reporting concerns about student safety, nor would its exclusion prevent them from introducing evidence of such a practice.[3] Rather, admission of this evidence would allow the District to improperly suggest to the jury that because MCDSS was contacted, the Goodells had, in fact, abused C.G. The parties appear to agree that there is no evidence of any such findings by MCDSS. In the absence of any evidence, the Court excludes evidence of these contacts to MCDSS as unfairly prejudicial to plaintiffs and likely to confuse or mislead the jury. Fed. R. Evid. 401, 402, 403. If, however, plaintiffs inquire regarding whether Mr. Calderon or Mr. Notheis ever reported suspected abuse to MCDSS, the Court will permit them to answer truthfully about their report of suspected abuse by the Goodells.

---

[3] At the hearing, the District acknowledged that this contact is the *only* occasion on which a report to MCDSS was made by Mr. Calderon or Mr. Notheis.

3

## II. DEFENDANT JAIME NOTHEIS'S MOTIONS IN LIMINE[4]

### A. Motion in Limine No. 1 (Alleged Conduct Toward Others)

Defendant Jaime Notheis moves for an order precluding plaintiffs from introducing evidence of alleged conduct involving persons other than C.G. Dkt. No. 104. Specifically, the evidence at issue concerns reports of alleged conduct by Mr. Notheis toward (1) other students in his class at San Vicente Elementary School prior to and during the time period C.G. was in his class, (2) adult coworkers before and after the relevant time period, and (3) other students at Main Street Middle School. Mr. Notheis argues that this evidence is impermissible character evidence that is not probative of any material facts at issue. Fed. R. Evid. 401, 402, 403, 404.

Plaintiffs say that they do not intend to introduce evidence of any misconduct that occurred after Mr. Notheis's alleged abuse of C.G., unless the District opens the door to such evidence. Accordingly, Mr. Notheis's motion to exclude all such evidence of his conduct is granted, subject to the use of such evidence for impeachment or rebuttal if the District should open the door to such evidence at trial.

However, plaintiffs maintain that evidence of any misconduct that occurred before and during the time C.G. was in Mr. Notheis's classroom is directly relevant to their claims under the Bane Act, Cal. Civ. Code § 52.1 and for negligence.[5] Plaintiffs argue that the probative value of the evidence far outweighs any prejudicial effect.

With respect to other conduct before and during the relevant time period, the Court denies the motion, subject to consideration of the nature and extent of the specific evidence to be offered at trial.

Mr. Notheis is correct that evidence of his other alleged misconduct may not be used to show that he acted in conformity with that other misconduct with respect to the disputed

---

[4] The Court will address Mr. Notheis's motions in limine inasmuch as they overlap with some of the District's motions (discussed below) and concern evidence that remains at issue, notwithstanding the parties' stipulation to dismiss Mr. Notheis from this lawsuit.

[5] Plaintiffs also argued that the subject evidence is relevant to their claim under 42 U.S.C. § 1983, but, as noted above, they have since agreed to dismiss the individual defendants. As discussed at the pretrial conference, the Court is not persuaded that plaintiffs properly can assert a § 1983 claim against the District, and plaintiffs have withdrawn their motion for leave to do so.

4

conducted relating to C.G. Fed. R. Evid. 404(a). However, because the District is now the only remaining defendant, the stated concerns about inadmissible character evidence as to Mr. Notheis is of less concern. Additionally, plaintiffs argue that evidence of other misconduct is relevant for at least two reasons: (i) to show that the District had knowledge of Mr. Notheis's abusive conduct dating back to 2012 such that the alleged misconduct directed at C.G. was reasonably foreseeable, and (ii) to show that the District, having responsibility for teacher supervision and retention, had a routine practice of tolerating Mr. Notheis's abusive conduct. Plaintiffs say that this evidence is relevant to their negligent supervision and retention claim and to their Bane Act claim. The Court agrees with plaintiffs that evidence of Mr. Notheis's other alleged misconduct prior to and during the time C.G. was in Mr. Notheis's classroom is relevant. Fed. R. Civ. P. 404(b), 406; *see Virginia G. v. ABC Unified School District*, 15 Cal. App. 4th 1848, 1855 (1993) ("[W]hile [teacher's] conduct in molesting [student] will not be imputed to the District, if individual District employees responsible for hiring and/or supervising teachers knew or should have known of [teacher's] prior sexual misconduct towards students, and thus, that he posed a reasonably foreseeable risk of harm to students under his supervision . . . the employees owed a duty to protect the students from such harm.").

However, the Court is concerned about the nature and extent of the evidence plaintiffs propose to introduce on these matters. The Court will permit evidence (documents and testimony) of *reports* and *complaints* of acts of alleged misconduct similar to those C.G. is alleged to have experienced, made to the District by aides, other teachers, or parents. However, the Court is reluctant to permit extended testimony or other evidence detailing each incident underlying the matters that were actually reported or complained of, as such evidence may have a tendency to confuse or mislead the jury regarding the particular matters at issue in this case.[6]

### B. Motion in Limine No. 2 (Status of Employment and Teaching Credential)

Mr. Notheis moves to preclude plaintiffs from introducing any evidence of the current status of his employment with the District and teaching credential. Dkt. No. 104. Mr. Notheis's

---

[6] The Court has taken this concern into account in setting limits for presentation of evidence.

5

1    employment with the District ended after the alleged events involving C.G.  The State of

2    California subsequently revoked his teaching credential.  Mr. Notheis argues that these facts are

3    irrelevant to the issue whether he engaged in alleged abuse of C.G. and is more prejudicial than

4    probative.

Plaintiffs stipulate that all evidence pertaining to Mr. Notheis's teaching credential should be excluded.  Accordingly, Mr. Notheis's motion to exclude all such evidence is granted.

As for Mr. Notheis's employment status, plaintiffs propose that the Court instruct the jury that Mr. Notheis no longer works for the San Vicente Elementary School, and that the jury should not draw any inference from that fact.  At the hearing on the motion, defendants advised that they concur in this proposal.  Accordingly, the Court will instruct the jury as plaintiffs propose.  The parties shall confer regarding the text of the instruction and shall advise whether it may be included in the statement of undisputed facts to be read to the jury.

### III.  DISTRICT'S MOTIONS IN LIMINE

#### A.  Motion in Limine No. 1 (Draft Expert Reports)

The District moves for an order precluding plaintiffs from presenting, referencing, or otherwise communicating to the jury in any way—including during voir dire—drafts of Dr. Laura Schreibman's expert report.  The District says that the draft reports were inadvertently produced to plaintiffs in discovery and that any reference to the contents of those drafts could unfairly create the impression that the opinions expressed are less firmly held than they are, and are not Dr. Schreibman's own conclusions.  However, the District does not object to any questioning at trial about the extent to which Dr. Schreibman consulted with or relied on two other experts, Dr. Richard J. Shaw and Dr. Pamela Mills, in preparing her report.

Plaintiffs maintain that the District repeatedly failed to properly disclose the facts, data and bases for Dr. Schreibman's opinions and that it remains unclear to what extent she relied upon other experts in preparing her report.  If the Court allows Dr. Schreibman to testify at trial, plaintiffs argue that they should be permitted to thoroughly cross-examine her as to the circumstances and people involved with each draft of her report.

For the reasons explained below, the motion is moot.

Expert reports generally are not admissible evidence of the opinion of a testifying expert, but they may be used for the purpose of impeachment. Draft reports generally are not even discoverable. The Court interprets the District's motion as arguing that Dr. Schreibman's draft reports were inadvertently produced and that defendants did not intend to waive the work product protection that otherwise attaches to draft expert reports pursuant to Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. In support of that argument, the District would have to show that (1) disclosure of the drafts was inadvertent, (2) reasonable steps were taken to prevent disclosure, and (3) the District promptly took steps to rectify the error in compliance with Rule 26(b)(5)(B). *See* Fed. R. Evid. 502(b).

The Court need not reach this issue, however, as plaintiffs represented at the hearing on this motion that they do not intend to use Dr. Schreibman's draft reports for any purpose.

### B. Motion in Limine No. 2 (Internal District Policies)

The District moves for an order precluding plaintiffs from presenting, referencing, or otherwise communicating to the jury in any way that internal District policies create a legal standard of care. Dkt. No. 107. According to the District, public entities may be liable for tortious injury caused by an act or omission only if a statute declares them to be liable. As such, the District contends that permitting evidence or argument that its policies create a standard of care would confuse and mislead the jury. Fed. R. Evid. 403. Plaintiffs argue that the District can be liable under a general negligence theory and that evidence of the District's policies therefore are relevant to the District's duty of care.

The motion is denied.

While the District is correct that its policies do not define the District's statutory duties, the policies are nevertheless relevant to plaintiffs' negligence claims. While noncompliance with such policies will not establish negligence per se, noncompliance with an internal policy may be relevant evidence of a breach of a duty of care. *See, e.g., M.W. v. Panama Buena Vista Union School District*, 110 Cal. App. 4th 508, 512 (2003) (discussing evidence of school district before-school supervision policy). At the hearing, plaintiffs identified two exhibits—Exhibits 26 and 44—that they will seek to admit in evidence. The District made no objections specific to these

1  two exhibits as part of its objections to plaintiffs' trial exhibits. The Court will permit evidence of
2  the policies reflected in these exhibits.

### C. Motion in Limine No. 3 (Notheis's Alleged Prior and Subsequent Conduct) and Motion in Limine No. 4 (Notheis's Treatment of Other Students)

These motions are virtually identical to defendant Notheis's Motion in Limine No. 1, and the Court reaches the same result.

### D. Motion in Limine No. 5 ("Golden Rule" and/or "Reptile Theory")

The District moves for an order precluding plaintiffs from presenting, referencing or otherwise communicating, arguing, or suggesting to the jury that jurors should reach a verdict by placing themselves in the position of either the defendant or the plaintiffs. Plaintiffs argue that the District's motion is both overbroad and premature, and fails to identify any specific evidence or argument that may be at issue. Additionally, plaintiffs contend that arguments directing the jury to consider safety as the reasonable standard of conduct is well within the scope of permissible advocacy.

As discussed at the hearing on this motion, the Court expects counsel for all parties to refrain from engaging in improper closing argument, and it will not categorically prohibit the particular trial strategy or form of argument that the District refers to as "reptile" theory. *See, e.g., McNally v. Riis*, No. 18-CV-1150 JLS (AGS), 2020 WL 209141, at *7 (S.D. Cal. Jan. 14, 2020) (declining to exclude such arguments).

### E. Motion in Limine No. 6 (Plaintiffs' Expert Robert Johnson)

Plaintiffs retained Mr. Johnson to assess economic damages. The District moves for an order excluding Mr. Johnson's testimony on the ground that his analysis is based on a flawed methodology. Dkt. No. 111. Specifically, the District argues that he relied on an improper negative discount rate, as well as on an interest rate derived from a single date in an aberrational time period, rather than a historical average. The District also seeks an order precluding Mr. Johnson from (1) referencing caselaw, jury instructions or other legal authority in explaining how he reached his opinions and conclusions and (2) critiquing or discussing the opinions and conclusions of defense expert Erik Volk.

Plaintiffs argue that this motion should be denied as an untimely *Daubert*[7] motion. But even if the Court considers the motion on the merits, plaintiffs contend that Mr. Johnson's methodology is appropriate and acceptable under *Jones v. Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983) and *Trevino v. United States*, 804 F.2d 1512 (9th Cir. 1986). Moreover, plaintiffs state that while they do not intend to elicit legal opinions from Mr. Johnson at trial, Mr. Johnson should be permitted to explain that he conducted his analysis in accordance with appropriate legal frameworks, so long as he does not explain their substance. Finally, plaintiffs contend that Mr. Johnson should be permitted to respond to Mr. Volk's opinions at trial, including that Mr. Johnson found documentation in Mr. Volk's file to be incomplete and that Mr. Volk's deposition was not completed.

The portion of the motion directed to Mr. Johnson's use of a negative discount rate is an untimely *Daubert* motion and is denied on that basis.

As to the remainder of the motion, the Court will not permit Mr. Johnson or any other witness to testify regarding what the law is. Mr. Johnson may describe what he did and may, if necessary, describe his understanding of what is required for calculation of the discount rate even if that description tracks a legal standard. In addition, as a general matter, no expert will be permitted to testify to matters not properly disclosed as required in advance of trial. At the hearing, the parties seemed to indicate that the District's objections on this point as to Mr. Johnson could be adequately addressed without a more specific decision on this motion, and if that is so, the Court will not order anything further on this point.

**IT IS SO ORDERED.**

Dated: June 26, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[7] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).